# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| UNITED STATES, for the use of KOUNTRY WOOD PRODUCTS, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 3:12-CV-542-TLS |
| OHIO FARMERS INSURANCE COMPANY, a corporation, | ) ) ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

In this suit brought under the Miller Act, 40 U.S.C. § 3133, the Use Plaintiff, Kountry Wood Products, LLC, seeks payment from the Defendant, Ohio Farmers Insurance Company, for supplies Kountry Wood provided for a construction project being completed at Fort McCoy, Wisconsin. The Defendant has filed a Motion to Dismiss [ECF No. 6] the Complaint on Bond [ECF No. 1] pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). The Defendant argues that, under the venue provision of the Miller Act, venue is proper in the United States District Court for the Western District of Wisconsin, where Fort McCoy is located. Kountry Wood argues that its Complaint adequately establishes that venue lies in this district. For the reasons discussed below, the Court will deny the Motion.

## COMPLAINT ALLEGATIONS

According to the Bond Complaint, the United States awarded W. Gohman Construction Company the contract to improve buildings located at Fort McCoy, Wisconsin. Gohman, as principal, and the Defendant, as the authorized surety, executed a Payment Bond in the amount of $3,247,535. The Payment Bond guaranteed payment to all persons supplying labor and

materials for the Fort McCoy improvement project. Gohman contracted with Pearlgreen, Inc., to provide wood cabinetry, including trim and accessories. Kountry Wood alleges that it sold, delivered, furnished, and supplied cabinetry, including trim and accessories, to Pearlgreen at its special instance and request for use in the project, that the materials it supplied were actually used in the project, and that all of its obligations with respect to furnishing and supplying the materials were performed in Nappanee, Elkhart County, Indiana. Kountry Wood alleges that it is still owed $41,618.87, plus prejudgment interest for the materials it supplied.

## ANALYSIS

The Defendant asks the Court to dismiss the Plaintiff's Complaint pursuant to the venue provision of the Miller Act and Federal Rule of Civil Procedure 12(b)(3), which provides that a party may move to dismiss an action when the action is not filed in the proper venue. The Miller Act mandates the use of surety bonds in federal construction projects. The Act's venue provision, 40 U.S.C. § 3133(b)(3), provides that a civil action brought under the Miller Act must be brought "in the United States District Court for any district in which the contract was to be performed and executed, regardless of the amount in controversy." The Defendant asserts that this statutory language requires a suit to be brought in the district where the government project site is located. The Defendant contends that, because the prime contract concerned a project in Fort McCoy, Wisconsin, and because Kountry Wood alleged that its materials were delivered to and ultimately used in the improvements occurring in For McCoy, the proper venue is in the district court in Wisconsin. Kountry Wood takes a broader view of the statutory language. Kountry Wood asserts that the statutory reference to "any district" is sufficiently broad to

2

encompass a district where a substantial portion of the work was completed. It argues that because its Complaint alleges that all of its obligations with respect to the furnishing and supplying of materials for the project were performed in Nappanee, Elkart County, Indiana, the allegations of the Complaint establish that venue is proper in this Court.

The parties' dispute brings to light the problem that potentially occurs where the location of a product's fabrication and assembly is separate from the location of the primary jobsite. The parties disagree whether the place where "the contract was to be performed and executed" is restricted to the locale of the construction project, or extends to the district where a supplier constructed and assembled its materials. The Seventh Circuit has not decided a case on point, and cases with similar factual scenarios are few and far between. Each side of this dispute believes it has found support in the decisions of other district courts. *Compare United States for the Use and Benefit of Caswell Equip. Co., Inc. v. Fidelity and Deposit Co. of Maryland*, 494 F. Supp. 354 (D. Minn. 1980) (holding that the place where equipment was installed was the district of performance even though the equipment was designed and fabricated elsewhere), *and United States for Use and Benefit of Straightline Corp. v. CNA Sur.*, 411 F. Supp. 2d 584 (W.D. Pa. 2006) (finding that the district where woodwork and cabinetry was installed, instead of the district where it was fabricated, provided the proper venue), *with United States for the Use and Benefit of Expedia, Inc. v. Altex Enters., Inc.*, 734 F. Supp. 972 (M.D. Fla. 1990) (holding that any district in which any substantial aspect of contract performance takes place is a proper venue for Miller Act claims). Of course, none of these district court cases are binding on this Court.

As stated already, the Miller Act's venue provision provides that a plaintiff may bring suit on a payment bond "in the United States District Court for any district in which the contract

was to be performed and executed." A court looks beyond "the express language of a statute only where (1) that statutory language is ambiguous or (2) where a literal interpretation would lead to an absurd result or (3) thwart the purpose of the overall statutory scheme." *United States v. Real Estate Known as 916 Douglas Ave.*, 903 F.2d 490, 492 (7th Cir. 1990) (numbering added). Moreover, "in expounding a statute, [a court] must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (quotation marks and brackets omitted).

The Defendant argues that it would be an "absurd result" to require "general contractors and their sureties . . . to litigate cases all across the country in any district court in which a claimant covered by the Miller Act is located." (Def.'s Reply 2, ECF No. 10.) This sounds more like an argument concerning the convenience of defendants than one of absurdity. The Defendant does not attempt to explain why litigating distinct claims for payment in the differing locations of the unpaid subcontractors is any more absurd than requiring small, regional, suppliers and laborers to pursue their claims in a potentially distant forum against large national or international sureties who may not even be located in that forum. The Defendant's absurdity argument does not support looking beyond the express language of the statute.

The Defendant also asserts that the benefit of the venue provision, as it interprets the provision, is that it focuses all claims into a single venue where the project occurred, and contends that this benefit is consistent with the remedial nature of the Miller Act. In support of its interpretation of the venue provision, the Defendant cites a case from the Western District of

Louisiana for the proposition that the provision was created for the benefit of the Defendant.[1] A plain reading of the provision and the statute as a whole, however, does not suggest that focusing the litigation into a single venue was an important consideration. The Supreme Court has said that the Miller Act is "'remedial legislation' that should be read charitably to subcontractors." *United States ex rel S & G Excavating, Inc. v. Seaboard Sur. Co.*, 236 F.3d 883, 886 (7th Cir. 2001) (quoting *Fleisher Eng'g & Constr. Co. v. United States for Use and Benefit of Hallenbeck*, 311 U.S. 15, 17 (1940)); *see also United States for Benefit & on Behalf of Sherman v. Carter*, 353 U.S. 210, 216 (1957) ("The Miller Act . . . is highly remedial in nature. It is entitled to a liberal construction and application in order properly to effectuate the Congressional intent to protect those whose labor and materials go into public projects.").

The Miller Act created a right to bring a civil action under the following circumstances:

> **(1) In general.**—Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.
>
> **(2) Person having direct contractual relationship with a subcontractor.**—A person having a direct contractual relationship with a subcontractor but no contractual relationship, express or implied, with the contractor furnishing the payment bond may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made. The action must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed.

---

[1] For a detailed analysis of this issue, see *United States for the Use of Brown Minneapolis Tank Co. v. Kinley Constr. Co.*, 816 F. Supp. 2d 1139 (D.N.M. 2011), which convincingly concludes that to read the Miller Act to deny "plaintiffs the benefits of the Act's venue provision is contrary to the language and spirit of the Act" *id.* at 1171.

40 U.S.C. § 3133(b)(1)–(2). Thus, the Miller Act contemplated that a sub-subcontractor, like Kountry Woods, would have a cause of action for payment from the bond that was furnished under section 3131, even without a direct contractual relationship with the contractor. The payment bond runs to the benefit of the United States, and subcontractors and suppliers are permitted to sue on the bond in federal court in the name of the United States. Kountry Woods is entitled to bring suit because it supplied "labor or material in carrying out work provided for in a contract for which a payment bond is furnished," in this case, the Fort McCoy improvements contract. The only restriction on where Kountry Woods can bring this suit is that it be in a district where the contract was to be performed and executed. The Plaintiff's performance of its obligations under its contract with Pearlgreen occurred in Indiana. There was no requirement that the Defendant, in order to complete its obligations to Pearlgreen, transport any goods to the prime construction location or install those materials there. Had Congress intended that the location of the work a supplier performed to meet its obligation to provide materials to a subcontractor not qualify as the kind of performance and execution that determined venue, it could have more clearly and narrowly delineated the proper venue as the location of the prime contract, or the location of the contract for which the payment bond was furnished. Congress did not define its use of the words "contract" or "performance." But Congress was fully aware that subcontractors would further contract for work, and that the location of the performance and execution of those contracts would vary. Knowing that such contracts would exist, Congress wrote into the Act a requirement that a person having a contractual relationship with a subcontractor, but not with the contractor who furnished the payment bond, i.e., a sub-subcontractor, provide a pre-suit notice that includes the name of the party "to whom the

6

material was furnished or supplied or for whom the labor was done or *performed*." 40 U.S.C. § 3133(b)(2) (emphasis added). Congress then used this same word, "performed," in the venue provision that followed without any indication that performance by a subcontractor or sub-subcontractor of its contract would not qualify as performance for purposes of venue as long as it ultimately supplied "labor or material in carrying out work provided for in a contract for which a payment bond is furnished."

Given the purpose of the Miller Act, and applying the plain meaning of the venue provision, the Court finds that the Plaintiff's allegation that it performed its contract obligations in this district is sufficient to confer venue in this Court.

## CONCLUSION

For the reasons stated above, the Court DENIES the Defendant's Motion to Dismiss [ECF No. 6].

SO ORDERED on February 12, 2013.

                                                                s/ Theresa L. Springmann
                                                                THERESA L. SPRINGMANN
                                                                UNITED STATES DISTRICT COURT
                                                                FORT WAYNE DIVISION